Good morning. Good morning, Your Honors. Christina Flores, on behalf of the petitioner, Mrs. Yes. Yes. I'm here on behalf of the petitioner, Mrs. Yu Hua Jin. That is her Mandarin name, her Korean name, because she's a Chinese citizen of Korean descent, is the name that's listed on the actual case, Kim. And this is an immigration matter, and the issues before the court are whether the board erred in upholding the immigration judge's finding that the petitioner did not meet her burden of establishing her eligibility for asylum. And the other issue is whether the board abused its discretion in exercising its discretion in denying the petitioner's case based upon Well, if we find that she didn't meet her burden, then we don't have to go further, right? That's true. Yes. So let's look at what we're reviewing in the last instance, the BIA, even though she was found not credible by the IJ, the BIA deemed her credible, but said, okay, but you didn't, you needed to corroborate and you didn't. So we have to look to what did she have notice of that? Did she, because there was a hearing, and during the hearing, there were a number of, at some point, it came, I don't know if you were the So then counsel asked for a continuance to bring the sister in, thinking like, well, I better find out what's going on there. And the IJ initially said no, but then they went on, and then there were questions that under cross-examination that could not be answered, and about, well, what do you have, do you have anything that can show that you had this beauty salon? What do you have about, were you in the hospital? You know, what can you show about, you know, can you show us some, you know, asking for other documents? And then after your client not being able to provide any of those, the court said, okay, I'll give you a continuance. And then when your client came back, the sister came, and then kind of a good news, bad news thing with the sister, because she really didn't answer a lot of those questions, but then she also mentioned that your client had been arrested for prostitution, I guess, after the initial asylum application, and pled to a lesser charge of loitering with the intent of prostitution, right? It was actually after the testimony had been taken. The majority of the testimony, it was at the time that the second, the remand had already taken place. But she had said she didn't have any crimes then, I guess, but then somehow in the second time, when, but the sister then said, oh, yeah, she's been arrested. She was arrested back in China, then she got arrested when she tried to come in, and then she got arrested when she was a massage, working in a massage parlor, right? It was actually a skin care business. Well, whatever, but that, but she got charged with prostitution and pled to a lesser offense, so. She was not convicted of prostitution. So why wasn't she on notice that when the court gave her, first said no to the continuance, but then asked all these questions that she couldn't answer, which pretty much went to the heart of what she was trying to claim, why, why wasn't she on notice that you better bring some corroboration in if you can get it? If I may just point out, I am actually the fourth attorney to represent the petitioner. She had no representation at the credible fear stage, and she had three previous attorneys since then, and I was just hired for the Ninth Circuit appeal. Okay, but we still have to look at what happened. Yes. That's your responsibility. Yes. So why wasn't she on notice? Perhaps it was due to ill preparation of previous counsel. She did provide some corroborating evidence that was sent by her mother. She had a number of identity documents. She had a copy of her, a page of her passport. She had her national identity card. She had a birth certificate. She had a driver's license from China. And we also have the overall credible testimony of the petitioner, and the sister's testimony actually also did corroborate some aspects of Sister said she didn't know anything about what happened in China. Well, she did indicate that she was told, she was informed by the petitioner that she had been arrested because of her health being a North Korean refugee, and that the sister was actually the one that advised her to come to the United States to seek asylum as a result of her, the harm that she suffered. What was her claim to past persecution? The claim of past persecution is that The hospital visit? Well, what? As a result Resulted in the hospital Well, as a result of her arrest and detention, beatings, number of beatings, there were three separate interrogations. She was punched. She was slapped. She was kicked. She was kicked out of her chair. Her head was beaten against the wall. She also was subjected to deprivation of food and water. She also was subjected to bright lights being shined in her face. She was actually at one point rendered unconscious, and it was at that point The judge wanted some proof of the hospitalization because she claimed she was in the hospital, said, can you get me something? And your client's story was that somehow her cousin came in and said, you better get out. She climbed out the window, and so the judge was just hoping to see whether she'd even been in the hospital. Well, because of the nature of the circumstances of the crime that she was being accused of, When she was rendered unconscious, she found herself in the hospital. Her cousin was actually a medical doctor at the facility, And the cousin was able to make arrangements for her to escape from the bathroom window. Okay, just so that I understand your argument. First, I don't know that you've conceded that there might have been some notice that she needed corroboration, But that being said, you are saying that she presented some corroboration. Okay, and so after that, when we're looking at it, Is the standard of review that it has to compel the result that you're asking for? What standard of review do you have to overcome? I do believe that under these particular circumstances, I'm not saying that across the board, that under these circumstances, With the evidence that she presented that corroborates some portions of her claim, That to have expected additional corroboration, Which in essence would be obtaining corroboration from a persecutor in a totalitarian system, To... Okay, you're saying she couldn't do more than she did. Yes. But that being said, then let's look at... I don't think we can look at it de novo and just decide it like it's never been decided. Isn't the standard that it's got to compel the result that you're asking for? We have to deal with standard of review, obviously on appellate review. I'm not hearing... Yes. We're not hearing the evidence in the first instance. Well, the standard, I believe, is the totality of the circumstances. So you say we get to re-weigh it, we look at it de novo, We re-weigh it like no one has ever seen it before, And we should decide that... You know, I'm trying to focus you on the standard of review here. I believe that the IJ did not give appropriate weight to... Okay, but the standard of review, I think, is the record has to compel the conclusion that requested corroborative evidence was not reasonably available. Right? I would agree. Okay. And it has to compel the conclusion that your client sufficiently corroborated her claim. So that's the lens we look through. Yes. And I believe that the petitioner has satisfied that burden because she did obtain the documents from her mother that were essentially neutral, didn't relate to the nature of the claim of having helped a North Korean refugee. That would not have put the mother in any kind of peril in obtaining those documents or being in possession of those documents if she had gone to the hospital or to the police station to try and obtain corroborating documents concerning the claim against her for having helped a North Korean refugee. That may have resulted in some harm to family members, to the mother or other relatives that might have tried to obtain those documents. Okay. You basically are down to a few seconds. I'll give you a minute for rebuttal... Thank you.  Thank you. All right. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Sana Lee representing the Attorney General. Your Honors, as you pointed out, the standard of review for corroborating evidence is that no court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence unless the court finds that... is compelled to conclude that such evidence is not available. But in fairness to Appellant's position, at the point that it was put over, and then I think it was put over 14 months to come back, the I.J. did not say specifically, okay, next time, this is the list of what I want you to bring back. The I.J., you know, we have to sort of surmise that she was on notice of that. And I think at the time the briefs were written, Wren would have been controlling, and then Lou came out after. And Lou somewhat, I think, lessens the standard of how explicit you have to be. How can we be sure that she was on notice of that what she had to do? Well, Your Honor, I believe at the beginning of her hearings, the immigration judge did tell her to provide documents to support her claim. And later on during her testimony, she was asked about various documents like, well, do you have proof of hospitalization? Do you have proof of being arrested? That's during cross-examination. So on a related point, let me... because I think this is the heart of what's most difficult about the record in this particular case. The statute talks about the trier of fact being the one to make the credibility determination and suggests that the I.J., not the government on cross or other things that might have come out during the course of the hearing, that the I.J., the trier of fact, has to be the one giving notice that corroborating evidence is going to be required before a credibility determination is made. And so in Wren and in Lou, we have explicitly said that under the statute it's the I.J. that gives the notice. So help me with the record. I only could determine, and I think a lot of the government's position really relies on cross-examination, which I don't think is sufficient under Wren and Lou and our interpretation of what the statute requires. So where in the record did the I.J. specifically tell her that corroborating evidence was going to be required? Well, okay, at the January 29, 2008 hearing, which is page 81 of the record, the immigration judge told the petitioner to bring supporting documents to her next hearing. And that was after they had discussed identity documents, because I believe she said she had some but had not provided them yet. And so the immigration judge went on to say, well, you need to bring any supporting documents. And as far as during the cross-examination, later that year, the immigration judge did say, well, why didn't you request these documents? She did ask the petitioner that. I believe that was specifically after the petitioner had discussed her evidence that she was an owner of a beauty salon and that she had been arrested. And the immigration judge said after that point, well, why didn't you request these documents? Because she had mentioned that she asked her mother to send certain documents, and her mother did send her some identity documents. And she was asked, well, why didn't you... well, what about... why didn't you ask for these other documents? And at that point, I believe that the immigration judge did. There wasn't another hearing after that. That was the last hearing, was it not? No, that was in 2008. And then there was the final hearing in 2010 when the petitioner's sister testified. And so that was around a year and a half later. Well, why didn't you ask your mom for the document and the generalized statement, bring your supporting documents to the next hearing? Those are the two pieces of evidence that the government relies on to demonstrate the I.J. specifically put her on notice that corroborating evidence would be required. Well, Your Honor, in addition to that, the...she was... the petitioner was asked about various documents by the, um, DHS attorney during the... Is that counting under Rendon and Liu in the statute? As the I.J. putting her on notice that corroborating documents would be required? Well, I think that that puts the petitioner on notice that she should bring these documents... No, I'm saying, does that count as the I.J. giving her notice under our case law? Mmm. Here's the argument I would make if I were you, all right? And then this is the question whether that would be enough. I would say when they asked for a continuance, initially when they found out about the sister, the I.J. said no. Then all of these questions came up after that she couldn't answer and things she didn't have, and then the I.J. said, okay, you can have a continuance. Yes, Your Honor. Can you defer from that? Does that satisfy the statute? I don't know that it would have before Rend, but does Liu lighten it up enough so that that... would be the I.J. putting that side of the case on notice that, hey, while you're at it, bring all these things, too? I believe it does satisfy that. I'll just make that argument for you. Your Honor. Is that the government's position? Because I'd like some clarification into what the government thinks the law requires in terms of who has to give the notice and the sufficiency of the notice. So the government, is the government conceding that's the I.J.'s responsibility to give the notice? Well, Your Honor, I believe that that's what this court requires. Right, well, you know, we're a three-judge panel, we're bound by a precedent, so that gets past step one, and then step two is the nature of the notice that would be deemed sufficient under our case law, and I take it you're going to... take Judge Callahan's... inferential... Yes, Your Honor, I do. ...and inferring it, is that the government's best argument under the circumstances of this case? Well, I believe the combination of a lot of factors. The initial notice about providing documents to support her application that the specific... the I.J. specifically said to her at one of her earlier hearings. She also, like Judge Callahan had said, got the continuance that I.J. specifically asked her during that 2008 hearing, well, why didn't you request these documents? Um, and... Well, it already came up here one time, right? And then went back, because the I.J. No, it came to the BIA, and then the BIA sent it back and said, hey, you need to be more specific about what your credibility finding involves. Right, Your Honor. So, um, I believe that during this whole process, the petitioner was put on notice that she needed these documents, and she never provided any of it. During that last hearing, was she at that point, I refresh my recollection, was she represented by counsel there? Uh, in 2010? Yeah. I believe so. Okay, so she had a lawyer at that point. Yes, Your Honor. I believe she was represented throughout her removal proceedings. It was only at the initial hearing, the initial, uh, not hearing, but the initial interview, that she wasn't. As far as I can remember, but I do believe during her, um, her merits hearings, she was... Apparently she had a bunch of lawyers. Right, Your Honor. Lawyers cycling in and out. Yes, um, so she had representation, and, um, she, you know, the statute does say you need to provide documents, and the only documents that she provided were these identity documents. And, uh, nothing, um, other, nothing else to support her claims, not even an affidavit where she could have um, stated, I'm sorry, affidavits from her family members. And, um, as far as her sister's testimony goes, it doesn't really support her claim because... Where is she right now? Do you know? Is she still here? The petitioner? Yes. I believe she's in the United States. I haven't heard, uh, anything otherwise. Um, so the government believes that she did not um, sufficiently corroborate her claim. And as far as the issue of discretion goes, she failed to show that the agency abused its discretion. I think the whole idea of the notice requirement is for the IJ to tell a petitioner, look, if you don't corroborate your claim, I'm going to make a ruling against you. And here, I don't know how she could infer, uh, why did you ask your mom, a question that the IJ posed during questioning. I don't know how that would lead a petitioner to know that there would be an adverse finding unless she brings additional corroborative evidence. Well, I think in general the statute puts her on notice that she needs to corroborate her claims in general. And, um... Well, sure. It's like saying, in general, put your best case forward, and so everybody sort of knows that, but I think the statute is more specific than that, according to our prior case law that we're bound to apply. Well, Your Honor, in, um, in the Liu case, I believe that the immigration judge, uh, said you need to bring supporting documents. Um, you're going to have to corroborate your claim. That's what we said in Liu, where an IJ gives notice that the asylum seeker's testimony is insufficient, and gives the petitioner adequate time to gather the corroborating evidence, and then the petitioner fails to do that, then the IJ may deny. That's not this situation, or I guess the question is whether that's the same as this situation. I believe it's very similar. I believe it's a very similar situation, where, um, she earlier in her hearing she was told to provide corroborating documents, and um, she had many years to do so, um, including, you know, after the remand by the board, and when she decided to have her sister testify about her identity. Um, and that was a year and a half after her initial testimony. So she had a long time, and, um, I don't think the question is whether there's sufficient time. I think there was plenty of time. The question is whether she was ever explicitly told to do it. You'd have to infer that, and so I question whether under our case law, an inference is sufficient to provide explicit notice by the IJ. Well, the IJ did provide the specific notice that she should bring corroborating evidence to support her claims. Okay. Unless there's further questions, we've taken you over time, and I'll give you one minute to read that. If I may just address your question, Your Honor, as to where she is, she is married to a U.S. citizen now, and she's the beneficiary of an approved I-130. She entered EWI, so she has to do the provisional waiver, and there's a pending I-12. Okay, she's trying to adjust her status, but what did she say? She entered without inspection, so she's not eligible to adjust with USCIS. She has to do a waiver, a provisional waiver. Both she and her husband are owners of businesses here in California. They're successful entrepreneurs. So where is she in that process? I mean, are we years away? They're pending I-212s, and I did attempt to try and stay these proceedings pending the outcome, but... Well, yeah, but it could be... I mean, is it any time this century, or what? I don't... Hopefully in the next year. Okay. But with respect to the corroboration, corroboration can also come in the form of testimony, not just documentary evidence. And the sister did corroborate some aspects of the petitioner's claim. She corroborated that her sister did, in fact, have a skin care business. She had been told earlier to provide corroboration, right? And then she brought the sister in. So that would seem to indicate to me that she and her lawyers knew that she needed to corroborate. And then... But she didn't bring anything else. And she had a very long time. Well, one thing with respect to the business is that by the time the second hearing came around, the business had already been sold, so she didn't have any... The mother didn't have access to records. There was some type of advertising that she apparently gave to her record. I don't know why it was not submitted. But I believe overall that the... With respect to medical documents concerning her having received medical treatment and being rendered unconscious at the hands of the police to expect her family to obtain those records, I think it would be quite ludicrous. Was there ever any mediation? Did you ever... Did this case ever go to our mediators? I don't believe it. I don't believe it did. Alright. Thank you. Thank you very much. This matter will stand submitted.
judges: Callahan, Nguyen, Ezra